1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   KENNETH DAYTON,                          CASE NO. CV-F-06-1076 LJO

10            Plaintiff,                      **ORDER ON DEFENDANT'S MOTION FOR**
                                              **SUMMARY JUDGMENT OR IN THE**
11       vs.                                  **ALTERNATIVE, PARTIAL SUMMARY**
                                              **JUDGMENT**
12  MODESTO IRRIGATION DIST.,

13            Defendant.
    _____/
14

15       By notice filed on October 4, 2007, defendant Modesto Irrigation District ("MID") moves for

16  summary judgment or in the alternative, partial summary judgment pursuant to Fed.R.Civ.P 56. Plaintiff

17  Kenneth Dayton filed an opposition on October 22, 2007.  Defendant filed a reply on October 31, 2007.

18  Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument.

19  The parties also filed various other documents in support of and in opposition to the motion for summary

20  judgment.  (See e.g., Doc. 59-82; 84.)  In addition, the Court requested further briefing on the narrow

21  issue of preemption of one of the state law claims.  This Court has carefully reviewed and considered

22  all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts

23  and responses thereto, objections and other papers filed by the parties.  Omission of reference to an

24  argument, document, paper or objection is not to be construed to the effect that this Court did not

25  consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered

26  the evidence which it deemed admissible, material and appropriate for summary judgment/adjudication.

27  Based on the review of the documents filed in support of and in opposition to this motion, the Court

28  issues the following order.

                                              1

## FACTUAL AN PROCEDURAL BACKGROUND

Plaintiff Kenneth Dayton was employed with the MID from June 1989 until June 3, 2005 when he was terminated.  His immediate supervisor was Bill Stockman ("Stockman") at the time of Plaintiff's termination.   Plaintiff alleges that beginning in 2004, Stockman targeted Plaintiff and other older workers with unjustified discipline and unfavorable job assignments. Plaintiff alleges the harassment and unjustified discipline was an effort to force long-term or older employees such as Plaintiff to quit or retire.  Plaintiff alleges that Stockman referred to older workers as "old wood" or "dead wood." Plaintiff alleges that Stockman told older employees that they need to retire, they were set in their ways and would not follow Stockman's orders.  Plaintiff also presents facts that he "was vocal" about alleged safety violations ordered by Stockman and objected to the treatment of older workers in Stockman's department.

In June and July of 2004, Plaintiff complained about safety violations to the Safety Committee about unsafe practices ordered by Stockman and complained to Stockman about various Occupational Safety and Health Administration ("OSHA") violations that Stockman initiated. Among other things, Plaintiff alleges Stockman directed workmen to go down into potholes without proper shoring in violation of OSHA and directed an apprentice to short circuit a capacitor bank rather than wait for the arrival of the appropriate tool in violation of MID policy which caused the capacitor bank to blow up. Plaintiff reported the incidents to the Safety Committee.

MID contends that Plaintiff was terminated for involvement in vehicular accidents, among other reasons.  MID presents evidence that Dayton was involved in three motor vehicle accidents while working for MID, two of which were "backing accidents."  In January 1995, he was involved in an accident and received a letter of reprimand.  (Doc. 17-2, Statement of Undisputed Facts, no. 6.)  He received another oral reminder for a backing up accident in November 2003.  MID presents evidence that in September 2004, Dayton received a Decision Making Leave ("DML") for various violations of policies and procedures based on an investigation showing: he left a jobsite without permission or notification, remained away from the job for several hours, left a co-worker along at the worksite, and visited a chiropractor and went home for lunch during work hours and used an MID vehicle for personal use. (Doc. 17-2, statement of Undisputed Facts, no. 6.)  On May 11, 2005, plaintiff was the passenger

1    in a vehicle involved in an accident where a truck driven by a co-worker backed into another vehicles.

2    MID contends the failure to use a "spotter" to ensure a safe backing maneuver and the failure to report

3    the accident, were considered violations of MID policy.  Due to the pending DML, an investigation of

4    the accident ensued, and Plaintiff was ultimately terminated.

5         MID maintains an Employee Handbook included a section on unlawful harassment, prohibiting

6    harassment of its employees, including harassment based on age.  Plaintiff knew about the policy yet

7    never reported to anyone at MID that he felt he was being harassed on account of his age.

8         Plaintiff filed his Complaint on June 27, 2006, in the Superior Court of California, County of

9    Stanislaus. On August 15, 2006, MID removed this case to the United States District Court, Eastern

10   District of California. Defendant Bill Stockman has been dismissed from this action.   Plaintiff's

11   complaint alleges claims for:

12        (1)    Age Discrimination in Violation of FEHA;

13        (2)    Age Discrimination in Violation of ADEA;

14        (3)    Wrongful Termination and Retaliation in Violation of FEHA;

15        (4)    Wrongful Termination and Retaliation in Violation of Title VII;

16        (5)    Violation of Public Policy;

17        (6)    Breach of Covenant of Good Faith and Fair Dealing; and

18        (7)    Negligent Infliction of Emotional Distress.

19                              **ANALYSIS AND DISCUSSION**

20   **A.    Summary Judgment Standard**

21        On summary judgment, a court must decide whether there is a "genuine issue as to any material

22   fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia*

23   *Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985).

24   The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby,*

25   *Inc.*, 477 U.S. 242, 248 (1986).  The requirement that an issue be "genuine" relates to the quantum of

26   evidence the Plaintiff must produce to defeat the defendant's summary judgment motion.  There must

27   be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,*

28   477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 290 (1968)*; T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The mere existence of a scintilla

4

1   of evidence in support of the Plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106

2   S.Ct. 2505.

3   **B.      Age Discrimination**

4        Plaintiff contends that his termination was age-based discrimination in violation of California

5   and federal law.

6        Plaintiff alleges defendant acted in violation of the Age Discrimination in Employment Act

7   ("ADEA"), 29 U.S.C. § 621, *et seq.*  Under the ADEA, it is "unlawful for an employer ... to fail or refuse

8   to hire or to discharge any individual or otherwise discriminate against any individual with respect to

9   his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29

10  U.S.C. § 623(a)(1).  Plaintiff also alleges a claim under the California Fair Employment and Housing

11  Act ("FEHA"), Cal.Govt.Code §12900, *et seq.*  The objectives of the FEHA and the ADEA are identical,

12  and therefore, California courts look to federal case law in the interpretation of analogous provisions of

13  the FEHA. *See Hersant v. California Dept. of Social Services*, 57 Cal.App.4th 997, 1002, 67 Cal.Rptr.2d

14  483, 486, fn. 1  (1997).

15      **1.      Circumstantial and Direct Evidence of Discrimination**

16       Plaintiffs bear an initial burden to establish a *prima facie* case of age discrimination.  Typically,

17  the prima facie case is shown by the "shifting burdens" test articulated in *McDonnell Douglas Corp. v.*

18  *Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).  A plaintiff has the initial burden to prove by a

19  preponderance of evidence a *prima facie* case of disparate treatment, that is, a plaintiff must offer

20  evidence that "give[s] rise to an inference of unlawful discrimination."  *Texas Dep't of Cmty. Affairs v.*

21  *Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502,

22  506, 113 S.Ct. 2742, 2746-2747 (1993).  The burden may be satisfied with direct evidence of

23  discriminatory intent or through the framework of *McDonnell* Douglas test. *See Vasquez v. County of*

24  *Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).[1]  "Direct evidence is evidence which, if believed, proves

25  the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*,

26  _____

27       [1]      Federal and California courts rely on federal interpretations of Title VII of the Civil Rights Act of 1964,
42 U.S.C. §§ 2000e, et seq., to interpret analogous FEHA provisions which prohibit unlawful discrimination.  *Bradley v.*

28  *Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

1  150 F.3d 1217, 1221 (9th Cir. 1988) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir.

2  1994)).

3        To establish a *prima facie* case of disparate treatment under *McDonnell Douglas* (in the absence

4  of direct evidence), a plaintiff must show he/she:

5        1.    Was a member of a protected class;

6        2.    Was performing his/her job satisfactorily;

7        3.    Suffered an adverse employment action; and

8        4.    The action occurred under circumstances suggesting a discriminatory motive, that is,

9              persons outside the protected class with equal or lesser qualifications were given more

10             favorable treatment.  *See McDonnell Douglas*, 411 U.S. at 792, 802, 93 S.Ct. 1817.

11 If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to articulate some

12 legitimate, nondiscriminatory reason" for adverse employment action.  *McDonnell Douglas Corp.,* 411

13 U.S. at 802.  If the employer carries its burden, plaintiff must have an opportunity to prove by a

14 preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons

15 but were a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804; *Burdine*, 450 U.S. at 253,

16 101 S.Ct. 1089. California also follows the *McDonnell Douglas* test when direct evidence of intentional

17 discrimination is not present.  *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354, 8 P.3d 1089, 1113, 100

18 Cal.Rptr.2d 352 (2000).

19       The *McDonnell Douglas* test is not used, however, where **direct evidence** of discrimination

20 exists.  In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985),

21 the Supreme Court instructed that "the *McDonnell Douglas* test is inapplicable where the plaintiff

22 presents direct evidence of discrimination."  Direct evidence, in the context of an ADEA claim, is

23 defined as:

24              "evidence of conduct or statements by persons involved in the
                decision-making process that may be viewed as directly reflecting the
25              alleged discriminatory attitude ... sufficient to permit the fact finder to
                infer that that attitude was more likely than not a motivating factor in the
26              employer's decision."

27 *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004) (Firing 70-year-old

28 Employee-driver because he was too old for coverage under Employer's new liability insurance policy

6

1    was direct evidence of age discrimination), *cert. denied*, 544 U.S. 974 (2005); *see e.g.*, *Palasota v.*

2    *Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) (Vice President's memo authorizing Manager

3    to offer plaintiff a severance package and discussing a broad plan to "thin the ranks" of older employees

4    in order to "ease the anxiety of this transition period" was direct evidence of age discrimination.); *Ezell*

5    *v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005) (Supervisor's admission that Employer intended "to get

6    rid of older carriers and replace them with younger, faster carriers" was direct evidence of discriminatory

7    intent.)

8         **2.      Direct Evidence of Discrimination**

9         Defendant argues that there is no direct evidence of discriminatory intent.  Plaintiff argues that

10   direct evidence of discriminatory animus exists.

11        Plaintiff presents direct evidence of age discrimination.  Plaintiff presents evidence of alleged

12   discriminatory statements made by Bill Stockman, Plaintiff's supervisor.  Plaintiff presents evidence that

13   Stockman said "he needed to get some younger meat in here to get the job done," and "the older guys

14   were stuck in their ways and didn't get as much work done as he would like."  (Decl. Dave Word ¶7.)

15   Stockman referred to older long-term employees as "old wood," said that older workers were not

16   producing up to expectation, and he wanted younger guys to be trained his way.  (Decl. Thomas Miller

17   ¶13.)  Stockman repeatedly asked when an older worker "would retire."  (Decl. Larry Prevatte ¶8.)

18   Stockman was one of the decisionmakers in ultimately terminating Plaintiff's employment.  From this

19   evidence, a jury could reasonably infer that Plaintiff was discharged based on discriminatory animus.

20        Similar comments have been held to be sufficient direct evidence of discriminatory intent.  *See*

21   *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 679, 683-84 (9th Cir.1997) (new supervisor's comments to

22   another supervisor that terminated employee "was old and burnt out [and] that he was hurting the store

23   image ... because [he] did not fit the Pape mold of a young, aggressive type manager like they had in

24   most other management positions," that "age was affecting [plaintiff's] memory and [that he] was too

25   old to change," and that Plaintiff  was an "old geezer" and an "old fart" were "distinguished from what

26   this court has previously viewed as stray remarks"); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145,

27   1149 (9th Cir.1997) (finding direct evidence of racial discrimination where employer referred to

28   Mexican-American employee as a "dumb Mexican"); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934

7

1  F.2d 1104, 1108 (9th Cir.1991) (finding direct evidence of sexual stereotype where employer referred

2  to female plaintiff as "an old warhorse" and to her students as "little old ladies"); *See also McDonald*

3  *v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990) (older employee told he could be "cheaply

4  replaced with a younger salesman"); *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1094 (5th Cir.1994)

5  ("old man," "old and inflexible" and "incapable"); *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1549

6  (11th Cir.1994) ("at your age you cannot produce like you once could, and we are going to have to make

7  some kind of adjustment"); and *Braverman v. Penobscot Shoe, Co.,* 859 F.Supp. 596, 601 (D.Me.1994)

8  (employer provided plaintiff with unsolicited and unwelcome retirement information package and

9  suggested that he retire).

10      The comments made by Stockman are similar.  Stockman wanted things done "his way," but the

11  older guys would not accommodate.  Plaintiff was one of the older guys.  Stockman was one of the

12  decisionmakers in terminating Plaintiff.  Accordingly, direct evidence exists that one of the

13  decisionmakers was motivated by age to  terminate Plaintiff.

14      Defendant argues that even if it is "direct" evidence, it is not temporal in nature and not specific

15  to support an inference of discriminatory animus.

16      Plaintiff presents evidence that is consistent with the time frame and duration of Plaintiff's

17  subordinate role to Stockman.  For instance, Declarant Billy Hammons testified that he worked for MID

18  until December 2004, and after Stockman became his supervisor, Stockman "regularly made derogatory

19  age related comments to me and my older co-workers." (Decl. Billy Hammons ¶9.)  Declarant Dave

20  Word worked with Stockman until 2006, and during the time Plaintiff worked for Stockman.  (Decl.

21  Dave Work ¶¶2-3.)  Dave Word testifies he heard Stockman say that Plaintiff  was an "older guy" stuck

22  in his ways and that he wanted "younger meat" to do the job.  (Decl. Dave Word ¶7.)  Another worker

23  testified that Stockman began then writing up employees for what would otherwise be considered minor

24  infractions. (Decl. Thomas Miller ¶15.)

25      This evidence may not specifically designate a time frame, but the time frame is consistent with

26  the duration of Plaintiff's assignment to supervisor Stockman and links the age related discrimination

27  claim to work related activities.  The evidence is consistent with Plaintiff's argument that Stockman was

28  finding reasons to fire him because he was "old wood."

1    Defendant argues that Stockman's comments are more consistent with the thought that

2    employees under 40 are more willing to embrace new ideas than employees over 40.

3    Defendant's inference from the evidence is but one inference that reasonably could be drawn

4    from the evidence.  An equally reasonable inference a reasonable jury could draw is that Stockman

5    intended to turn over his department and hire new employees to do things "his way."   If an inference

6    can reasonably be drawn from a set of facts, then a genuine issue of fact will exist even though a more

7    probable inference may also be drawn.  *Hunt v. Cromartie*, 526 U.S. 541, 550, 119 S.Ct. 1545 (1999).

8    **C.    Third and Fourth Claim for Wrongful Termination and Retaliation in Violation of FEHA**

9    **and Title VII**

10    In his complaint, Plaintiff alleges that he engaged in protected activities for which he was

11    retaliated against and which resulted in his termination.  Plaintiff alleges he engaged in (1) supported

12    co-workers in their claim against MID for age discrimination, and (2) reported and complained about

13    unsafe job site practices or activities including violations of OSHA and MID safety regulations.  (Doc.

14    1-1, Complaint ¶40.)

15    Under Title 42, an employer may not take any adverse employment action against an employee

16    who has (1) opposed any practice made unlawful by Title VII; or (2) made a charge, testified, assisted,

17    or participated in any manner in any investigation, proceeding or hearing under Title VII. 42 U.S.C. §

18    2000e–3(a).  Under the FEHA, an employer may not retaliate against any person for opposing any

19    practices forbidden by the FEHA, or filing a complaint, testifying, or assisting in any proceeding under

20    the FEHA; Govt.Code § 12940(h); 2 Cal.C.Regs. § 7287.8.

21    The *McDonnell Douglas* burden-shifting framework applies in retaliation as well as

22    discrimination cases under both federal and state law:

23    (A)    plaintiff must prove a *prima facie* case;

24    (B)    the employer must then articulate a legitimate, nonretaliatory reason for the action taken;

25    and

26    ( C)    plaintiff must then prove the employer's reason is a pretext.

27    *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003); *Flait v. North American*

28    *Watch Corp.*, 3 Cal.App.4th 467, 475–476, 4 Cal.Rptr.2d 522, 527–528 (1992) (California follows

1  federal rules on burden of proof and production of evidence).

2      To establish a *prima facie* case, plaintiff must show that:

3          (1)    plaintiff engaged in a protected activity;

4          (2)    the employer subjected plaintiff to an adverse employment action; and

5          (3)    a causal link exists between the protected activity and the employer's action.

6  *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (under

7  Title VII); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1044, 32 Cal.Rptr.3d 436, 446 (2005) (under

8  FEHA).

9      Defendant argues that Plaintiff cannot show two of the elements for a *prima facie* case.

10  Defendant argues that Plaintiff did not engage in protected activities, and he did oppose conduct made

11  unlawful by FEHA or Title VII.  Defendant argues that even if Plaintiff "opposed" conduct made

12  unlawful by Title VII or FEHA, there is no causal link between the protected activity and the adverse

13  employment decision.  There is no evidence any decision maker was aware of that conduct.

14      The Court finds that there are triable issues of fact as to the challenged elements.  An employee

15  need not make the opposition <u>explicitly</u> known to the employer - it is sufficient that the totality of the

16  circumstances infer complaints against discrimination.  In *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th

17  1028, 1046, 32 Cal.Rptr.3d 436, 448 (2005), the Court stated:

18          "[W]hen the circumstances surrounding an employee's conduct are
          sufficient to establish that an employer knew that an employee's refusal
19          to comply with an order was based on the employee's reasonable belief
          that the order is discriminatory, an employer may not avoid the reach of
20          the FEHA's antiretaliation provision by relying on the circumstance that
          the employee did not explicitly inform the employer that she believed the
21          order was discriminatory."

22  Thus, the court will find opposing activity if the employee's comments, when read in their totality,

23  oppose discrimination.

24      Plaintiff presents evidence that he directly challenged Stockman and the treatment of "older

25  workers" assignment of work to older workers.  For instance, Declarant Ronnie Sheppard states that he

26  saw Dayton challenge Stockman's assignment of Sheppard to a task too demanding for Sheppard's age:

27  "Dayton argued that a man of my age and seniority and physical condition should be accommodated with

28  less physically demanding work and it was unsafe to assign me to work alone . . . " (Decl. Ronnie

1   Sheppard ¶4.)  Stockman was then the individual who "wrote up" infractions by Dayton, which were

2   never before infractions, and participated in the investigation and ultimate termination of Plaintiff.  The

3   evidence reveals issues of fact as to whether Stockman's heightened response, following Dayton's

4   continual complaints, was retaliation for his protected activity.  An employer may be liable for retaliation

5   if the supervisor had a retaliatory motive: "(S)o long as the supervisor's motive was (an) actuating,

6   but-for cause of the dismissal, the employer may be liable for retaliatory discharge." *Reeves v. Safeway*

7   *Stores, Inc.*, 121 Cal.App.4th 95, 100, 16 CR3d 717, 720 (2004)(parentheses added) (district manager

8   fired worker whose supervisor reported him for workplace violence; worker denied violence and claimed

9   supervisor was retaliating for worker having reported supervisor for sexual harassment of others.) Here,

10  the evidence shows, and a jury could reasonably find, that Dayton directly complained to his supervisor

11  of discriminatory age-based conduct.

12       Further, Mr. Hammons testifies that he had identified Dayton as a witness in Mr. Hammons'

13  allegation against MID for age discrimination and harassment.  (Decl. Hammons ¶11.)  An employee

14  who volunteered to testify in support of a co-worker's sexual harassment lawsuit, but was never called

15  upon to testify, nevertheless "participated" in the proceeding within the meaning of Title VII's

16  anti-retaliation provision. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174 (2nd Cir. 2005).  In its

17  reply, Defendant argues that Mr. Hammons first complained of age discrimination in a lawsuit file in

18  November 2005, after Plaintiff was terminated.  (Reply brief p. 8.)  This fact is presented for the first

19  time in the reply brief.

20       Accordingly, from the evidence submitted to the Court, a reasonable jury could conclude that

21  complaints to Stockman and to the safety committee, and the proximity of time to Plaintiff's termination,

22  were the causes of Plaintiff's termination.

23  **D.    Plaintiff's Breach Of the Covenant Of Good Faith And Fair Dealing Claim**

24       The Court requested supplemental briefing on this claim.  In particular, the Court requested

25  whether the claim is preempted by §301 of the Labor Management Relations Act, 29 U.S.C. §185.

26       The parties filed briefs on November 13, 2007.  Defendant argues that the breach of the covenant

27  of good faith and fair dealing claim is preempted because it requires the interpretation of the collective

28  bargaining agreement, here, called the "Memorandum of Understanding."  Plaintiff, on the other hand,

argues that the affirmative defense of preemption has been waived, because it was not pled in the answer, and that the Memorandum of Understanding was neither produced in discovery nor properly authenticated in defendant's supplemental brief.

Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 ("Section 301") vests jurisdiction in federal courts over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. §185(a). Although the text of Section 301 contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In addition, although the language of Section 301 is limited to "suits for violation of contracts," the Supreme Court has expanded Section 301 preemption to include cases the resolution of which "is substantially dependent upon analysis of the terms of [a collective bargaining agreement.]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

Preemption of state law actions is designed to foster "uniform, certain adjudication of disputes over the meaning of collective-bargain agreements," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410-11, 108 S.Ct. 1877, 1884, 100 L.Ed.2d 410 (1988), and to ensure the "effectiveness of arbitration," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 219, 105 S.Ct. at 1915. In *Allis-Chalmers Corp*, the Court held "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, . . or dismissed as pre-empted by federal labor-contract law." *Allis Chalmer Corp*, 471 U.S. at 220 (citations omitted). The Ninth Circuit has held that breach of the covenant of good faith and fair dealing is preempted. *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (9th Cir. 1990) (Where the collective bargaining agreement contains terms governing job security, this breach of the covenant of good faith and fair dealing cause of action is preempted); *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 599 (9th Cir. 1996) (claim for breach of the covenant of good faith and fair dealing is also clearly preempted because such covenant is an implied term of her CBA.)

It is undisputed that Plaintiff was subject to the Memorandum of Understanding. Plaintiff refers

12

1   to the grievance procedure of the Memorandum of Understanding in which he participated to grieve his

2   termination.  His testimony also indicates the existence of the collective bargaining agreement. (Doc.

3   23, Dayton Decl. ¶11 ("The Memorandum of Understanding with the Union provides that . . ."); ¶24 ("in

4   2001, Modesto Irrigation District and the Union negotiated a new Positive Discipline Policy."))

5           The issue of Section 301 preemption is one that the Court cannot ignore.  "[T]he Supreme Court

6   has explained, the 'preemptive force of section 301 is so powerful as to displace entirely any state cause

7   of action for violation of contracts between an employer and a labor organization.'" *Burnside v. Kiewit*

8   *Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  The Ninth Circuit has acknowledged that the §301

9   policies influence the analysis of preemption.  "Although the line between reference to and interpretation

10  of an agreement may be somewhat hazy, the totality of the policies underlying § 301--promoting the

11  arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and

12  protecting the states' authority to enact minimum labor standards--guides our understanding of what

13  constitutes interpretation."  *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 -1109

14  (9th Cir. 2000).

15          Plaintiff argues that preemption has been "waived," because preemption was not alleged as an

16  affirmative defense.  Generally, preemption is a "matter constituting an avoidance," and thus must be

17  raised as an affirmative defense or is waived. *Williams v. Ashland Eng. Co.*, 45 F.3d 588, 593, fn. 7  (1st

18  Cir. 1995) (dictum), *cert. denied*, 516 U.S. 807 (1995); *Kennan v. Dow Chem. Co.*, 717 F.Supp. 799,

19  808–809 (MD FL 1989).  However, preemption under Section 301 of the Labor Management Relations

20  Act is generally "complete" preemption due to the compelling, underlying national policies supporting

21  Section 301.  Plaintiff has not cited any authority that Section 301 preemption may be waived.

22          For the above reasons, the Court finds that preemption of state law claims by Section 301 is not

23  waived.  Resolution of the claim for the breach of the covenant of good faith and fair dealing in

24  "inextricably intertwined with consideration of the terms of the labor contract."  *Allis-Chalmers Corp.*

25  The claim for the breach of the covenant of good faith and fair dealing does indeed require interpretation

26  of the parties' Memorandum of Understanding.  *Newberry v. Pacific Racing Assoc.*, 854 F.2d 1142 ((th

27  Cir. 1988) is pertinent and controlling.  The claim is preempted.

28  /////

13

1    **E.**      <u>**Termination in Violation of Public Policy**</u>

2         Plaintiff alleges that his termination violated the public policy embodied in the FEHA, Title VII,

3    42 U.S.C. §1981, 29 U.S.C. §215, Labor Code §§ 98.6, 232 and 932, and Business and Professions Code

4    §17200.   (Complaint ¶55.)   In its motion, defendant challenges each statutory ground for alleged

5    termination in violation of public policy. In his opposition, Plaintiff argues that issues of fact exist as

6    to his claims of unsafe working practices and discriminatory practices.  Plaintiff does not challenge

7    adjudication of the public policy violations claim based on:

8          1.      Business and Professions Code Section 17200 - unfair competition;

9          2.      42 U.S.C. §1981 - unlawful conduct based upon race, national origin or ethnicity;

10         3.      29 U.S.C. §215 - discrimination based upon complaints of violations of the Fair Labor

11                  Standards Act;

12         4.      Labor Code §§98.6 and 232- discrimination for disclosure of amount of wages; and

13         5.      Labor Code §923 - public policy that negotiation of terms and conditions of labor should

14                  result from voluntary agreement between employer and employees.

15   Plaintiff has not presented evidence on these potential public policy violations.  Therefore, adjudication

16   as to these public policies as a basis for the fifth claim for relief will be granted.

17         There can be no right to terminate for an unlawful reason or purpose that contravenes

18   fundamental public policy.  *Silo v. CHW Med. Found.*, 27 Cal.4th 1097, 1104, 119 Cal.Rptr.2d 698, 703

19   (2002).  "It is settled that an employer's discharge of an employee in violation of a fundamental public

20   policy embodied in a constitutional or statutory provision gives rise to a tort action." *Barton v. New*

21   *United Motor Manufacturing, Inc.*, 43 Cal.App.4th 1200, 1205, 51 Cal.Rptr.2d 328 (1996); *Cabesuela*

22   *v. Browning-Ferris Industries of Cal., Inc.*, 68 Cal.App.4th 101, 107, 80 Cal.Rptr.2d 60 (1998).

23         The elements for such a tort claim are:

24         1.      An employer-employee relationship;

25         2.      Termination or other adverse employment action;

26         3.      The termination or adverse action was a violation of public policy;

27         4.      Termination was a legal cause of plaintiff's damage; and

28         5.      The nature and extent of plaintiff's damages.

1  *See Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 n. 8, 22 Cal.Rptr.2d 172, 177, n.

2  8 (1993).

3        Violations of FEHA and policies against race, sex, age and disability discrimination support the

4  tort claims. *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1160-1161, 77 Cal.Rptr.2d 445, 455-

5  456 (1998) (disability discrimination); *Stevenson v. Superior Court*, 16 Cal.4th 880, 896, 66 Cal.Rptr.2d

6  888, 897 (1997) (age discrimination).

7        Since there are questions of fact in the age discrimination claims, both under the FEHA and

8  ADEA, summary adjudication on the public policy against age discrimination will be denied.

9        Plaintiff also alleges termination in violation of public policy for his reporting safety violations.

10  The parties focus their arguments on whether Plaintiff adequately reported his concerns about safety

11  practices. Defendant argues that "[p]laintiff never raised issues of unsafe practices at monthly safety

12  meetings." (Doc. 17-1, Moving papers p.22:23.) Dayton presents evidence in his declaration that he

13  complained about safety issues to Stockman, to Mike Quigley, a member of the MID safety committee,

14  to Jahna Colby, MID safety officer. (Doc. 44, Opposition brief p. 22:6; Doc. 23, Dayton Decl. ¶22.).

15  Defendant contends that Plaintiff's declaration is inconsistent with Plaintiff's deposition testimony

16  wherein he stated he did not report any safety violations to anyone. Defendant has pointed to specific

17  deposition testimony wherein Plaintiff testified he did not report safety violations to anyone other than

18  Stockman:

19        Q: Did you ever report to anyone that Mr. Stockman wanted you to work in unsafe

20              environments or in unsafe conditions?

21        A: No. (Def's Ex. "B," 45:17-20.)

22        Q: Did you ever report to anyone at MID above Mr. Stockman about any unsafe job

23              practices or activities?

24        A: No. (Def's Ex. "B," 159:14-17.)

25        Q: Did you ever bring up the capacitor incident involving you

26              and Mr. Bowles and Mr. Stockman at any safety meeting?

27        A: No. (Def's Ex. "B," 54:4-7.)

28

1        A party cannot create an issue of fact by a declaration contradicting his or her own deposition

2  or other sworn testimony. Unless the damaging testimony is shown to have resulted from mistake or

3  confusion, the contradictory declaration creates no genuine issue of fact on a summary judgment motion.

4  *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603–1604

5  (1999) (recognizing, without endorsing, "sham affidavit" holdings in every circuit); *See Kennedy v.*

6  *Allied Mut. Ins. Co.*, 952 F.2d 262, 266–267 (9th Cir. 1991) (district court must make factual

7  determination that contradiction was actually a "sham".) The non-moving party is not precluded from

8  elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition;

9  minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence

10  afford no basis for excluding an opposition affidavit." *Scamihorn v. General Truck Drivers,* 282 F.3d

11  1078, 1086 (9th Cir. 2002).

12        Here, Plaintiff submits a declaration stating that he was on medication and confused at the time

13  of his deposition which effected his ability accurately to remember certain events related to his

14  complaints of unsafe conditions.

15        The Court must determine if Plaintiff's declaration is a sham. In this case, other witnesses have

16  submitted declarations which corroborate Plaintiff's now refreshed recollection. The sham affidavit rule

17  should not bar explanation or clarification of earlier testimony where the later testimony is <u>corroborated</u>

18  <u>by</u> other evidence or testimony from nonparties. *Scamihorn v. General Truck Drivers*, 282 F.3d 1078,

19  1085, fn. 7 (9th Cir. 2002). In this case, other non-party witnesses submit declarations wherein they state

20  that they were present at Safety Committee meetings wherein Dayton complained about safety

21  procedures. See e.g., Decl. Hammons ¶12; Decl. Larry Prevette ¶14. The Court concludes that, in light

22  of the corroborating statements, Plaintiff's declaration sought to clarify statements made in his

23  deposition, is not a sham and therefore should not be excluded.

24        The declarations, as a whole, raise an issue of fact whether Plaintiff's complaints of safety

25  violations were a cause of termination. A reasonable jury could infer from the evidence, as a whole, that

26  older workers who, in particular, complained of Stockman's practices were targeted for termination. The

27  evidence as a whole shows Stockman wanted things done "his way" including safety "cutting corners"

28  which older, more experienced workers were unwilling to do. Plaintiff was vocal about Stockman's

1  alleged practices.  Therefore, a reasonable jury may conclude that safety complaints were a factor in his

2  termination.

3  **F.       Negligent Infliction of Emotional Distress**

4        Defendant argues that this claim must fail because (1) Workers' Compensation is the exclusive

5  remedy, and (2) intentional conduct cannot be a basis for negligent infliction of emotional distress.

6        **1.       Worker's Compensation Exclusivity**

7        Generally, injured employees sustain in the course of employment are governed by the Workers'

8  Compensation law.  Lab.Code, § 3600 et seq.  Such injuries are preempted by the exclusivity provisions

9  of that law and are not compensable in a civil action. Lab.Code, § 3602.  Preemption under the Workers'

10  Compensation law includes claims for intentional infliction of emotional distress based on actions that

11  are a normal part of the employment relationship, such as demotions, promotions, criticism of work

12  practices, and frictions in negotiations as to grievances.  *Cole v. Fair Oaks Fire Protection Dist.*, 43

13  Cal.3d 148, 159-160, 233 Cal.Rptr. 308 (1987).

14        Intentional and negligent infliction of emotional distress claims that are based on an employer's

15  conduct that contravenes fundamental public policy or exceeds the risks inherent in the employment

16  relationship are not subject to Workers' Compensation law preemption.  *Livitsanos v. Superior Court*,

17  2 Cal.4th 744, 754 (1992); *Cabesuela v. Browning-Ferris Industries of California, Inc.*, 68 Cal.App.4th

18  101, 112-113 (1998) (intentional infliction claim).  Actions by employees alleging discriminatory

19  conduct on the part of employers in violation of the Fair Employment and Housing Act are not barred

20  by the exclusive remedy provisions of Workers' Compensation. *See Watson v. Department of*

21  *Rehabilitation*, 212 Cal App 3d 1271, 261 Cal.Rptr. 204 (1989), *review den* (holding that the allegations

22  and evidence of racial and age discrimination did not involve conduct which can be expected normally

23  to occur in the workplace and which is part of the employment risk).

24        Accordingly, the claim is not barred by the exclusivity provisions of workers' compensation

25  because the underlying conduct is alleged to be violative of fundamental public policy.

26        **2.       Intentional Conduct**

27        Defendant cites *Semore v. Pool*, 217 Cal.App.3d 1087 (1990) for the proposition that intentional

28  conduct cannot form the basis for a negligent infliction of emotional distress claim.  In *Semore*, a

17

chemical plant employee was terminated for refusing to consent to a pupillary reaction eye test to determine whether he was under the influence of drugs.  The court sustained a demurrer to the intentional and negligent infliction of emotional distress claims.  The court found that the supervisor's conduct in requiring the testing was a normal part of the employment relationship and such supervisor conduct was necessarily "intentional."  Likewise, in *Edwards v. U.S. Fidelity & Guarantee Co.*, 848 F.Supp. 1460, 1466 (N.D. Cal. 1994), *aff'd*, 74 F.3d 1245 (9th Cir. 996), the court held that the supervisor's refusal to promote Plaintiff was inherently intentional and within the compensation bargain. Both cases held that intentional conduct within the compensation bargain could not be the basis for the negligence action.

While *Semore* nor *Edwards* dealt with intentional discrimination as the basis for a negligent infliction claim, both cases stand for the proposition that an intentional act cannot give rise to a claim for negligent infliction of emotional distress.

Plaintiff's allegations in Negligent Infliction claim merely incorporates the prior claims for intentional discrimination, retaliation, and violation of public policy.  Each claim is an intentional tort.

> "Defendants, and each of them, engaged in negligent conduct as heretofore alleged, in violation of public policy and statutory standards."
> (Complaint ¶ 64.)

Plaintiff does not argue how the <u>intentional</u> conduct of defendants can support a <u>negligent</u> claim for relief.   Plaintiff has not presented any facts which would implicate negligence of any kind on behalf of defendant.  Accordingly, summary adjudication on this claim is appropriate.

/////
/////
/////
/////
/////
/////
/////
/////
/////

18

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.      The motion is DENIED as to the First and Second claims for relief for Age Discrimination under the Age Discrimination in Employment Act and under the Fair Employment and Housing Act;

2.      The motion is DENIED as to the Third and Fourth claims for relief for Wrongful Termination and Retaliation in Violation of FEHA and Title VII;

3.      The motion is DENIED in PART and GRANTED in PART as to the Fifth claim for Termination in Violation of Public Policy.

4.      The motion is GRANTED as to the Sixth claim for relief for Breach of the Covenant of Good Faith and Fair Dealing.

5.      The motion is GRANTED as to the Seventh claim for Negligent Infliction of Emotional Distress.

IT IS SO ORDERED.

**Dated:    November 16, 2007**              /s/ Lawrence J. O'Neill
                                             UNITED STATES DISTRICT JUDGE